**DAVID ALLEN (SBN 87193)**
DAVID ALLEN & ASSOCIATES
5230 Folsom Boulevard
Sacramento, California 95819
(916) 455-4800 Telephone
(916) 451-5687 Facsimile

Attorneys for Plaintiff
CHERYL SPAULDING

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHERYL SPAULDING, ) Case No.
        Plaintiff, )
        v. ) **COMPLAINT FOR:**
METROPOLITAN LIFE INSURANCE ) **1. Breach of ERISA Plan (ERISA 502(a)(1)(B) and 502(a)(3); and**
COMPANY, and DOES ) **2. Attorney Fees & Costs**
1 to 100, )
        Defendants. )
_____ )

**Introduction**

The policy is a contract outlining the obligations of the insurance company and its insureds. The policy obligates Defendant to pay qualified claimants. Defendant found Plaintiff qualified. Defendant paid Plaintiff. Defendant terminated payments when it determined Plaintiff was no longer disabled. Plaintiff provided evidence of her continued disability. Defendant refused to reinstate benefits.

**ALLEGATIONS**

1. This action seeks damages for the denial of total disability benefits under a disability insurance plan.

2. Attached are Bates stamped exhibits. Throughout this Complaint Bates stamps shall be referenced without the additional Bates zeros for convenience. The attached exhibits are

1
**COMPLAINT**

true and correct copies (redacted pursuant to Federal Rules) of:

**Exhibit 1** METROPOLITAN LIFE INSURANCE COMPANY Policy #116600-1-G - Bates Stamped  PLAN 001 - PLAN 052.

**Exhibit 2**: METROPOLITAN LIFE INSURANCE COMPANY California Secretary of State Corporate Filing Record showing the corporation was active in California for all dates at issue - Bates Stamped CA 001 - CA 002.

**The Parties**

3. Plaintiff CHERYL SPAULDING worked hard as an Acute Care Registered Nurse with Sutter Health.  She pushed herself physically and mentally through cancer treatment and injury.  However, the mental demands of her position and her pain were eventually too much. Her ongoing cognitive difficulties resulting from chemotherapy ("chemo brain") include difficulties with focus limit her ability to execute the cognitive requirements more complex than elementary work duties.  Her neuropathy and back conditions further limit her physical abilities.  She was forced to leave her job, resigning herself to life of diminished cognitive functioning and pain management for her remaining years.

4. METROPOLITAN LIFE INSURANCE COMPANY is an insurance company underwriting, servicing, and performing all other functions necessary to place and administer benefits for various financial instruments including, without limitation, long term disability insurance policies.  "METLIFE" as used herein, designates METROPOLITAN LIFE INSURANCE COMPANY in all forms in which it exists or existed, or is recognized as existing, during relevant times mentioned in this complaint and in all forms in which it conducts business.

5. Plaintiff is informed and believes and upon such information and belief alleges that each of the defendants named herein was the agent or employee of each of the other defendants, or otherwise affiliated with them, in all the matters alleged herein, and in doing all the matters complained of, acting within the course and scope of such agency, employment or affiliation.

**Jurisdiction and Venue**

6. Venue is properly laid within the United States District Court, Eastern District of California, pursuant to 29 U.S.C. §1132(e)(2) because the employer, plan and administrator do business within this district, and because the ends of justice so require.

[**All Exhibits**]

7. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1337 and 29 U.S.C. §1132(e). Plaintiff's claims arise under the "ERISA" 29 U.S.C. §1001, et. seq.

**Employment**

8. Plaintiff was employed by Sutter Health as an Acute Care Registered Nurse. It is a position in which fast and far-reaching decisions are made involving patients with severe injury or illness. The shifts included heavy lifting, bending, pushing, pulling, and required she possess clear cognitive functioning to administer medications and make immediate critical decisions.

**Plan**

9. METLIFE issued a policy ("Plan") to Plaintiff's Employer, Sutter Health, Policy No. 116600-1-G. METLIFE also issued a Life Insurance Plan. [**Exhibit 1**]

10. Part of the compensation package EMPLOYER provided Plaintiff CHERYL SPAULDING was insurance for long term disability. [**Exhibit 1**]

11. METLIFE wrote and administered the insurance plan while doing business in California. [**Exhibit 2**]

12. Defendant METLIFE is a corporation acting as the agent for EMPLOYER, and vice versa; Defendants are charged with certain claims-handling responsibilities under the Plan. [**Exhibit 1**]

13. Defendant METLIFE funded the disability benefits under the Plan. [**Exhibit 1**]

14. The EMPLOYER Plan states:

"Disability or Disabled means that as a result of sickness or injury You are either Totally Disabled or Partially Disabled.
Totally Disabled or Total Disability means:

During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary

3
**COMPLAINT**

way.

After such period, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your,

- age;
- education;
- training;
- experience;
- station in life; and
- physical and mental capacity

that exists within any of the following locations:

a reasonable distance or travel time from Your residence in light of the commuting practices of Your community;

- a distance of time equivalent to the distance or travel time You traveled to work before becoming disabled; or
- the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area." [**Exhibit 1**]

15. The Plan requires applicants to apply for Social Security benefits. Under the Plan, Plaintiff's METLIFE benefit payment will be offset by her Social Security Benefit payment. [**Exhibit 1**]

16. Under the policy, the benefit value is 60% of Plaintiff's salary prior to becoming disabled and the minimum benefit is $100.00 per month. Benefits are offered through age 65.

17. While a claimant is disabled under the plan her premiums are paid on the life insurance plan. [**Exhibit 1**]

**Claim Value**

18. The benefit value is $6,076.98 per month.

19. The gross total value of the remaining claim under the plan is 40.4 months x $6076.98 (06/23/2020 - 11/13/2023) = $245,509.99

**Social Security Claim**

20. As required by the Plan, Plaintiff applied for Social Security Disability. She was approved April 20, 2019 with an onset date of December, 2017.

21. Social Security Disability, or Title II of the Social Security Act, is administered by the Social Security Administration. Title II appears in the United States Code as §§401-433,

subchapter II, chapter 7, Title 42.

22. The Social Security Administration's website states:

"The definition of disability under Social Security is different than other programs. Social Security pays only for total disability. No benefits are payable for partial disability or for short-term disability.

"Disability" under Social Security is based on your inability to work. We consider you disabled under Social Security rules if:

You cannot do work that you did before;

We decide that you cannot adjust to other work because of your medical condition(s); and

Your disability has lasted or is expected to last for at least one year or to result in death.

This is a strict definition of disability. Social Security program rules assume that working families have access to other resources to provide support during periods of short-term disabilities, including workers' compensation, insurance, savings and investments." http://www.socialsecurity.gov/dibplan/dqualify4.htm

"Your condition must interfere with basic work-related activities for your claim to be considered. If it does not, we will find that you are not disabled. . . ."
http://www.socialsecurity.gov/dibplan/dqualify5.htm

23. MetLife is aware Ms. Spaulding was approved for Social Security Disability as of April, 2019. She repaid MetLife's claimed overpayment. Social Security continues to consider her totally disabled.

**Disabling Condition**

24. During Plaintiff's employment with EMPLOYER, Plaintiff suffered cancer and a fall.

25. Plaintiff underwent a variety of treatments. Unfortunately, Plaintiff's condition became worse over time. Plaintiff's doctor recommended she seek disability benefits.

26. Plaintiff applied for disability through METLIFE, beginning December, 2017.

**Claim History/Primary Denial**

27. METLIFE investigated Plaintiff's claim and began payments. However, METLIFE's investigation discounted her back injury, depression, and anxiety. Instead it focused on her cancer treatment. When the treatment ended it claimed she could return to work.

28. METLIFE issued a primary denial letter May 27, 2020 to terminate benefits June 22, 2020.

29. Plaintiff knew she was not capable of submitting an appeal on her own and had difficulty finding counsel to assist her. Eventually her son was able to help her find counsel to assist with the appeal. By the time they found representation the appeal time was almost at an end. Plaintiff's counsel obtained an extension of time and prepared the appeal.

**Evidence in Appeal**

   **a. Medical Conditions**

30. Plaintiff's counsel reviewed Cheryl Spaulding's disability period medical documentation and found the following diagnoses:

    - Anxiety
    - Arthritis hip and sciatica
    - Asthma
    - Bursitis L arm
    - Cognitive dysfunction resulting from chemotherapy
    - Diabetes mellitus type II
    - GERD (gastroesophageal reflux disease)
    - High cholesterol
    - Hx of recurrent urinary tract infection
    - Hypertension
    - Malignant neoplasm of endometrium
    - Mid back pain on left side
    - Obesity
    - Plantar fascial fibromatosis
    - Right sided sciatica
    - Sensory neuropathy: Active. Stable. Grade II. She struggles with numbness.
    - Severe depression
    - Uterine cancer, Stage III, Grade I, <50% MMI but has LVSI
    - Varicose vein of leg"

31. Cheryl Spaulding suffers from both joint and neuropathic pain. She developed peripheral neuropathy in her hands and feet during from her cancer treatment. Mrs. Spaulding suffers from both numbness and pain, and the pain is worsening. She says she drops a lot of things, and her incidence of falls is increasing. She discussed her lingering chemotherapy side effects with her oncologist who told her told any symptoms which persist more than a year probably will not get better. Cheryl's hips and low back ache as a result of joint injury, both from her Worker's Compensation injury and the degeneration of her joints over time. "A lot of days I just don't feel well."

   **b. Effects of Chemotherapy**

32. According to the Mayo Clinic,

6
**COMPLAINT**

"As more people are living longer after cancer treatment, more is becoming known about late side effects of cancer treatment."[1]

"Chemo brain is a common term used by cancer survivors to describe thinking and memory problems that can occur during and after cancer treatment. Chemo brain can also be called chemo fog, cancer-related cognitive impairment or cognitive dysfunction.

Signs and symptoms of chemo brain may include the following:

Being unusually disorganized
Confusion
Difficulty concentrating
Difficulty finding the right word
Difficulty learning new skills
Difficulty multitasking
Feeling of mental fogginess
Short attention span
Short-term memory problems
Taking longer than usual to complete routine tasks
Trouble with verbal memory, such as remembering a conversation
Trouble with visual memory, such as recalling an image or list of words"[2]

33. Cheryl Spaulding suffers from all of the symptoms listed and they are worse the more stress she is under. She says learning anything new takes ten times as long as before, "I used to be good a putting stuff together." She can no longer multitask, "I used to do for years. I had the energy, it was fine. Now I have trouble just getting a couple things done every day. I give myself two things and it seems like it takes all day." She writes reminders for herself because she forgets things "more than I would like to say."

34. Ms. Spaulding's medical records show indirect evidence of her cogitative issues. For example, she asked for a new referral because her neuropathy was worsening and memory and mood swings were not improving. When she went to the appointment she forgot to mention her falls or cognitive challenges. As a result she failed to receive the assistance she needs.

**c. Witness Observations**

35. Several witnesses made statements in support of Cheryl Spaulding's disability

---

[1] https://www.mayoclinic.org/diseases-conditions/cancer/in-depth/cancer-survivor/art-20045524

[2] https://www.mayoclinic.org/diseases-conditions/chemo-brain/symptoms-causes/syc-20351060

appeal including:

> "She forgets her train of thought when she's talking to me on the phone . . . ." Renuka Singh, friend of Plaintiff's for over 20 years, (1/9/2021)

> "She is unable to accomplish the simplest of tasks without guidance and instruction. She doesn't retain any of that information to be able to accomplish the same tasks and needs guidance every time. I have observed her fall twice which was unexplained at my residence. I have observed her difficulty with using her hands. She has lost mostly all knowledge of simple technology and computer programs and frequently, if not daily calls for help. . . . She has frequent mood swings, fits of crying and anger due to being overwhelmed." James Spaulding, Plaintiff's son (1/19/2021)

> "She has difficulty remembering and concentrating. She gets overwhelmed easily and struggles to manage stress. She requires assistance completing basic tasks. She is easily fatigued and has difficulty lifting things." Friend Hanah Ploub (1/17/21)

36. Further, medications she is forced to take have significant side effects that are common and well known to a chemotherapy treatment drug regime. The variety and/or "cocktail" of these medications that are required are highly known to be extremely detrimental to any kind of any ongoing continuous activity. These medications are known to in fact produce spurts of energy minus the ability to engage in substantial continuous employment/work because it is not possible due to ongoing issues confronted due to the major side effects. As is mentioned several times in the report by Dr. Jasso, Dr. Chima's from 3/14/18 to 01/16/19 confirms the symptoms aggravated by her physical diagnoses... and "brain fog."

**d. Vocational Analysis**

37. On November 15, 2021 Vocational Rehabilitation Expert Michael Frank rendered a Vocational Expert Opinion on Ms. Spalding's ability to return to work given her overall disability complex:

> ". . . Ms. Spalding indicated that she has great difficulties in focusing, concentration and communication. She finds that she has difficulty in her communication due to searching for words to express herself. This was certainly evident when this consultant interviewed her.

> Residual functional capacity (RFC) orthopedic
>
> Dr. Pietruszka RFC report is consistent with the light exertional category in the DOT( dictionary of occupational titles). Furthermore it outlines occasional postural restrictions over various physical activities.
>
> Nicolle Ionascu PsyD QME clinical neuropsychologist who completed a neuropsychological testing battery on Ms. Spalding notes the following restrictions.
>
> Language: . . .. Ms. Spaulding completed this task using the letters FAS and had low average performance (scaled score 7).
>
> Psychologically, Ms. Spaulding appears to experience a tremendous amount of anxiety and stress related to her medical conditions. Ms. Spaulding also appears to be suffering from elevated anxiety and depression symptoms, which can significantly interfere with cognitive efficiency and exacerbate her experience of cognitive dysfunction in her day-to-day life.
>
> . . . To begin with from a neuropsychological perspective Dr. Ionascu limited her to a work environment where tasks need to be broken down into simple component, with repeated instructions and to follow a consistent routine. . . . . Furthermore it is acknowledged that she is depressed and anxious by the medical examiners."

38. Cheryl Spaulding's difficulties with focus limit her ability to execute the cognitive requirements more complex than elementary work duties. Her neuropathy and back conditions limit her physical abilities.

**Administrative Review**

39. MetLife sent Mrs. Spaulding's appeal and records out for physician review.

40. The reports failed to consider Ms. Spaulding as a whole person in that they fail to consider the co-morbidity brought about by her back condition due to years of work she has performed. While she may be physically able to perform sedentary work, she is completely unable to function mentally due to chemo brain/fog. This fact is repeatedly mentioned by Mrs. Spaulding and noted by her physicians in that she is simply unable to focus. As mentioned previously, her oncologist confirmed the condition will not get better.

**Final Administrative Denial**

41. On December 22, 2021 METLIFE wrote to Plaintiff DATE re-affirming its denial of benefits. This denial exhausted Plaintiff's administrative remedies.

42. Plaintiff's counsel requested a copy of the claim file and METLIFE provided the file.

**FIRST CAUSE OF ACTION**: **BREACH OF CONTRACT: ERISA PLAN BENEFITS (ERISA 502(a)(1)(B) and 502(a)(3):**

PLAINTIFF CHERYL SPAULDING, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY ALLEGES:

43. Plaintiff refers to Paragraphs 1 though 42 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

44. Plaintiff was enrolled under the Plan which at all relevant times was in full force and affect. The terms and conditions of the plans at issue provided the Plaintiff would receive disability payments/income replacement payments due to sickness or injury if she could no longer perform the material and substantial duties of her occupation while under a doctor's care. The plan and its promised benefits were provided to Plaintiff as part of her compensation in exchange for providing service to EMPLOYER and is thereby subject to ERISA.

45. Plaintiff performed all the conditions on her part which the plan required her to perform.

46. On or about December 17, 2017, Plaintiff became disabled and timely submitted a claim for disability benefits. METLIFE denied benefits May 27, 2020. Defendant METLIFE stated Plaintiff was capable of performing her job duties.

47. Defendants breached the terms of the plans thereby violating 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by continually refusing and failing to pay disability benefits to Plaintiff.

48. As a direct and legal result of the violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by Defendant as herein alleged, Plaintiff suffered, and will continue to suffer in the future, damages under the terms of the policy, plus interest, for a total amount to be determined at the time of trial.

49. Defendants have unreasonably, arbitrarily and capriciously breached the obligations set forth in the ERISA regulations and in the plans issued by Defendants. Defendants unreasonably, arbitrarily and capriciously withheld from Plaintiff the benefits promised by the plan.

50. METLIFE's evaluation of Plaintiff's claim served the ends of METLIFE, rather than the insured's best interests. This is a violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3).

**SECOND CAUSE OF ACTION**: **FOR AN AWARD OF ATTORNEYS FEES AND COSTS AGAINST DEFENDANT PURSUANT TO 29 U.S.C. § 1132(g)(1)**

PLAINTIFF CHERYL SPAULDING, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY ALLEGES:

51. Plaintiff refers to Paragraphs 1 though 50 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

52. 29 U.S.C. §1132(g)(1) authorizes this Court to award reasonable attorney's fees and costs of action in an ERISA action.

53. As a result of the actions and failings of the Defendants, Plaintiff retained the services of legal counsel and has necessarily incurred attorney's fees and costs in prosecuting this action. Further, Plaintiff anticipates incurring additional attorney's fees and costs in pursuing this action, all in a final amount which is currently unknown. Plaintiff therefore requests an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, as follows:

1. Damages to date of judgment for failure to provide full benefits under the Plan, plus interest, including prejudgment interest, in a sum to be determined at the time of trial;
2. For attorneys' fees and expenses reasonably incurred by Plaintiff to obtain the Plan benefits, in a sum to be determined at the time of trial;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

DATED: April 1, 2022

DAVID ALLEN & ASSOCIATES

*//s// David Allen*

By_____

DAVID ALLEN
Attorney for Plaintiff, CHERYL SPAULDING

**COMPLAINT**